UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REZA ABGHARI,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>LAURA HERMOSILLO et al.,<br><br>　　　　　Respondents. | CASE NO. 2:26-cv-00269-JNW<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## 1.  INTRODUCTION

In August 2025, Immigration and Customs Enforcement (ICE) arrested and detained Petitioner Reza Abghari. His petition for a writ of habeas corpus seeks: (1) immediate release from custody; (2) an order preventing his re-detention absent changed circumstances and procedural due process; (3) an order preventing his removal to a third country without notice and meaningful opportunity to respond; (4) an order barring removal to any third country under ICE's allegedly punitive third country removal policy; and (5) an order prohibiting ICE from removing Petitioner outside this jurisdiction. *See* Dkt. No. 1 at 21–22. For the reasons stated below, the Court GRANTS IN PART Abghari's petition.

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

## 2. BACKGROUND

Abghari is an Iranian citizen who has lived in the United States for more than 25 years. Dkt. No. 1. He entered the country when he was just 17-years old as a derivative beneficiary of his father's approved asylum application. *Id.* ¶ 10. Since August 24, 2006, Abghari has been subject to a final order of removal with an order of withholding of removal to Iran. Dkt. No. 11 ¶ 9. On November 22, 2006, he was issued an Order of Supervision ("OSUP"). *Id.* ¶ 10.

Between 2005 and 2015, Abghari was convicted of several criminal offenses for which he served time in prison and in ICE custody. *Id.* ¶¶ 11–16. His most recent OSUP was issued on October 31, 2016. *Id.* ¶ 18. In the decade since, Abghari has led a crime-free and productive life, complying with the terms of his OSUP without issue. *Id.* ¶¶ 17–20; Dkt. No. 13 at 3.

On August 6, 2025, while on his way to celebrate his birthday with his five-year-old daughter, Abghari was stopped by ICE agents who approached with assault weapons drawn and pointed at him. Dkt. No. 1 ¶ 28. He was taken into custody and has been held in the Northwest ICE Processing Center in Tacoma, Washington ever since. *Id.*

On August 24, 2025, the Department of Homeland Security ("DHS") reopened Abghari's removal proceedings. Dkt. No. 11 ¶ 20. Three weeks after his arrest, on August 28, 2025, ICE revoked Abghari's OSUP, without providing him notice or an opportunity to respond. *Id.* ¶ 21. ICE contends that Abghari's OSUP was revoked because of his "Robbery in the Second Degree conviction, there being a final order of removal, his aggravated felony conviction, and the issuance of a travel document

being expected in this case." Dkt. No. 11 ¶ 21. But the robbery conviction occurred on February 11, 2010—six years before ICE revoked his OSUP based on a conviction it already knew about when it granted the OSUP in the first place. Dkt. No. 12-1 at 5.

On October 30, 2025, an immigration judge terminated Abghari's withholding grant but granted him deferral of removal under the Convention Against Torture ("CAT"). *Id.* ¶ 22.

On January 26, 2026, ICE served Abghari a "warning for failure to depart and an instruction sheet regarding assisting in removal." *Id.* ¶ 25. ICE attests that Abghari signed the document and has agreed to help find a third country for removal. *Id.* ¶ 25. Deportation Officer Gennadiy Baz attests that the "ERO is currently attempting to find a third country that will accept the Petitioner." *Id.* ¶ 26. No third country has been identified.

### 3. DISCUSSION

**3.1 Legal standards.**

**3.1.1 Habeas relief.**

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of

habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 3.1.2   Other equitable relief.

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *See Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy

past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Plaintiffs seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006); *see Francisco Lorenzo,* 2026 WL 237501, at *6 (applying permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

### 3.2   Abghari's continued detention violates due process.

Abghari argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id*. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699.

The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id*. at 701. After six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention thus becomes increasingly demanding over time.

Abghari is detained under 8 U.S.C. § 1231(a)(6), which authorizes continued detention after the 90-day removal period for certain categories of noncitizens or release under conditions of supervision. *See Zadvydas*, 533 U.S. at 682. His removal order became final on August 24, 2006. He has been detained since August 6, 2025. Before his most recent period of detention, he was also detained in April 2004, from March 3 to March 28, 2007, from October 3, 2007 to January 4, 2008, from August 23 to October 12, 2010, and on October 31, 2016. Dkt. No. 11 ¶ 11, 13–14, 16–18. It is undisputed that the Government has detained Abghari for well over six months, in total.

The Government argues that the absence of a specific removal date does not render Abghari's detention indefinite. Rather, it contends detention becomes "indefinite" only when the receiving country refuses to accept the noncitizen or removal is legally barred. Dkt. No. 10 at 12 (citing *Diouf v. Mukasey*, 542 F.3d 1222, 1223 (9th. Cir. 2008)). But *Diouf* does not hold that a petitioner must show that a country affirmatively refused acceptance to trigger *Zadvydas* review. *Diouf*, 542

F.3d at 1223. In any event, the Government has not even identified a third country for potential removal, let alone obtained acceptance from one. Abghari has shown there is no good reason to believe that his removal is likely to occur in the reasonably foreseeable future.

The Government bears the burden of providing affirmative evidence that removal is reasonably foreseeable—it cannot satisfy that burden with vague assertions about its continued interest in effectuating removal. Here, the Government offers only that it is "currently attempting to find a third country that will accept the Petitioner" and that "the issuance of [Abghari's] travel document [are] expected." Dkt. No. 11 ¶¶ 21, 26. It then asserts, without support, that "it is reasonable that such third country would be one that would accept Petitioner." Dkt. No. 10 at 12. This is not enough. The Government has been unable to remove Abghari since his removal order became final in August 2006—nearly twenty years ago. It offers no assurances about when a third country might be identified, when removal might occur, or why this time should be different. These deficiencies are particularly concerning given that Abghari has cumulatively served well over six months in ICE detention.

Because there is no significant likelihood of removal in the reasonably foreseeable future, Abghari's continued detention is no longer authorized by statute and violates due process. He must be released.

**3.3   The OSUP revocation violated due process.**

Abghari was detained on August 6, 2025, without notice, a stated reason, or a pre-deprivation hearing. Three weeks later, his OSUP was revoked, again without notice and an opportunity to respond. The Constitution requires more.

Under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest to determine what process is constitutionally required. This Court has applied that test and finds that due process requires pre-deprivation notice and a hearing before revoking a noncitizen's order of supervision and re-detaining them. *Aslan v. Wamsley et al.*, Case No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (applying *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976))).

Courts in this district and elsewhere have so held. *See, e.g., Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Tesara v. Wamsley*, Case No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even when it alleges supervised release violations, the Government must provide

notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez v. Bostock*, No. 25-cv-01404-GJL, 2025 WL 2841574, at *8–9 (W.D. Wash. Oct. 7, 2025). And a "post-deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819 * 4 (W.D. Wash. Jan. 23, 2026) (revocation of an OSUP requires notice and a pre-deprivation hearing). *Tzafir v. Bondi*, No. 25-CV-02067-JHC-SKV, 2026 WL 74088 *3-5 (W.D. Wash. Jan. 9, 2026) ("The Government's redetention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to her by the Constitution."). This case presents nothing that would warrant a different result.

The Government claims that it did provide notice and a reason for revoking Abghari's OSUP. His OSUP was revoked on August 28, 2025—three weeks after the date of detention. This is not notice. The Government responds that no pre-deprivation hearing is required because Abghari is a noncitizen subject to a final removal order. Dkt. No. 10 at 12–13. The Government further argues that such procedural requirements would interfere with its interest in promptly executing removal orders. It is true that the Government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "[p]reventing danger to the community." *Zadvydas*, 533 U.S. at 690. But Abghari has complied with the conditions of his OSUP for nearly ten years without incident. He has appeared for his check-ins. He has committed no criminal offense in over a decade. *See* Dkt. No. 13. The Government points to no evidence that Abghari posed a flight

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9

risk or danger to the community at the time of his arrest. Under these circumstances, the Government's interest in re-detaining Abghari without notice and hearing is low. *Tzafir*, 2026 WL 74088, at *4 ("[i]n immigration court, custody hearings are routine and impose a 'minimal' cost.") (quoting *Carballo v. Andrews*, No. 25-978, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025)).

All three *Mathews* factors favor Abghari and support finding that his re-detention violates procedural due process. This forms another basis for his immediate release.

Because this constitutional ground is dispositive, the Court need not reach Abghari's separate claim that the OSUP revocation was also arbitrary and capricious under the Administrative Procedure Act and the Immigration and Nationality Act.

### 3.4    The Government must follow the law if they re-detain Abghari again.

Abghari asks the Court to prohibit his future re-detention absent changed circumstances, notice, and a hearing before a neutral decisionmaker. The Court finds this relief necessary to fully realize the intent of this order.

Abghari has established risk of his re-detention. He has been labeled as a target for immigration arrest based on his criminal conviction history. ICE has already detained him once without process and without a significant likelihood of removal in the reasonably foreseeable future. These factors raise concerns that, absent injunctive relief, Abghari may be subject to the same due process violation again. Several courts in this district have granted similar relief under comparable

circumstances. *See, e.g.*, *Nguyen*, 2026 WL 183819 * 6; *Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir*, 2026 WL 74088, at *5 (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, No. 24-cv-2187, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without valid travel document and other specified conditions).

Accordingly, the Court prohibits the re-detention of Abghari unless the Government first provides written notice of the basis for the proposed re-detention and an immigration court hearing is held to determine whether detention is appropriate.

### 3.5    Third-country removal requires notice and a meaningful opportunity to respond.

Abghari also seeks an order enjoining his removal to any third country without notice and a hearing. Dkt. No. 15 at 16–18. The Government makes three arguments in opposition: (1) the claim is not ripe because no third country has been designated; (2) Abghari's membership in the *D.V.D. v. Dep't Homeland Sec.,* 778 F. Supp. 3d 355, 394 (D. Mass. 2025) class bars individual relief; and (3) ICE's third-country removal policy already provides sufficient process. The Court rejects each argument.

First, the claim is ripe. Abghari is subject to a removal order. The Government is "actively working" to carry out Abghari's removal to a third country. ICE has identified him as a "threat to public safety" and an "enforcement priority."

Dkt. No. 12-1 at 3. Under these circumstances the threat of third-country removal is not speculative and is thus ripe for review.

Second, Abghari's membership in the *D.V.D.* certified class does not bar his individual claims. Numerous courts in this district have already rejected this argument. *See, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 730–31 (W.D. Wash. 2025) . The Supreme Court's stay of the *D.V.D.* preliminary injunction does not deprive this Court of jurisdiction to adjudicate Abghari's individual habeas claims.

Third, there is a significant risk that the Government will try to deport Abghari to a third country without notice and a hearing. The July 9 ICE memorandum does not provide the process the Constitution requires. The Government contends the memo "already provides [the requested] relief" of notice and an opportunity to respond. Dkt. No. 10 at 14–15. But the memo states that "ERO will not affirmatively ask whether the alien is afraid of being removed to the country of removal." Due process requires that a noncitizen be asked whether they fear persecution or harm upon removal to the third country. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019). The memo also provides that when there are "diplomatic assurances" from the receiving country, a noncitizen may be removed "without the need for further proceedings. Dkt. No. 13-1. And in exigent circumstances, ICE may execute removal in as little as six hours. *Id*. Courts in this district have held that this removal policy violates due process. *See, e.g., Kumar v. Wamsley,* No. C25-2055-KKE, 2025 WL 3204724, at *6 (W.D. Wash. Nov. 17, 2025) (finding that ICE's third country removal policy violates due process); *Nguyen*, 796 F. Supp. 3d at 728 (holding that the memo "contravenes Ninth Circuit law"

requiring notice of third country removals and opportunity to apply for fear-based protections); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2 (W.D. Wash. Oct. 23, 2025) (same).

Consistent with these decisions, Abghari is entitled to notice of any country to which ICE intends to remove him and a reasonable opportunity to apply for withholding of removal or CAT protection.

**3.6     Abghari's remaining requests for relief.**

Abghari asks the Court to enjoin his removal to any third country because the Government's third country removal policy is unconstitutionally punitive. The Constitution prohibits the Government from imposing punishment on noncitizens subject to removal orders without the protections of a criminal trial. *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896); *Zadvydas*, 533 U.S. at 693–94. In *Nguyen v. Scott*, another court in this district found the petitioner likely to succeed on this claim based on evidence—sworn declarations—that "pre-1995 Vietnamese immigrants who have been deported to South Sudan and Eswatini have been imprisoned incommunicado since their arrival." 796 F. Supp. 3d at 734. The court in *Abubaka v. Bondi* adopted *Nguyen's* factual findings and granted habeas relief to another pre-1995 Vietnamese national facing removal to the same countries. No. 25-cv-1889-RSL, 2025 WL 3204369, at *8 (W.D. Wash. Nov. 17, 2025). Unlike *Nguyen* and *Abubaka*, the Government has not identified a specific third country for potential removal. On this record, the Court declines to enjoin removal of Abghari to all third countries.

The relief granted here—notice and a meaningful opportunity to respond in reopened removal proceedings—provides Abghari a mechanism to contest his removal to a third country where he may face persecution or harm.

### 4. CONCLUSION

Accordingly, the Court ORDERS:

1. The Petition for a Writ of Habeas Corpus is GRANTED IN PART.
2. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to the conditions of his prior OSUP.
3. Petitioner may not be re-detained unless Respondents provide Petitioner with written notice of the basis for the proposed re-detention in advance and an immigration court hearing is held to determine whether detention is appropriate.
4. Respondents must REFRAIN from removing or seeking to remove Petitioner to a third country without providing notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.
5. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.
6. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the

award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

7. All other relief requested is DENIED without prejudice, as stated in this Order.

Dated this 24th day of February, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 15